MARY ANN MAUZY ET AL., APPELLANTS, V. CLAUS HINRICHS ET AL., APPELLEES.

FILED MAY 6, 1911. No. 16,389.

1. **Descent and Distribution: SCHOOL LANDS.** The interest of a vendee in possession of school lands under a contract of purchase from the state, part of the purchase price of the land having been paid, at his death, descends to his heirs, and does not pass to his administrator. It is alienable, descendible and devisable in like manner as if it were real estate held by a legal title.

2. **Appeal: ISSUES.** The supreme court will not consider on appeal issues not tendered by the pleadings.

3. ———: **THEORY OF CASE.** Parties will as a rule be restricted in the supreme court to the theory upon which the cause was tried in the court below.

4. **Evidence** examined and referred to in the opinion, *held* insufficient to entitle plaintiffs to any of the relief demanded in their petition.

APPEAL from the district court for Seward county: GEORGE F. CORCORAN, JUDGE. *Affirmed.*

*J. C. McNerney* and *O. B. Polk,* for appellants.

*J. J. Thomas, Edwin Vail* and *Norval Bros., contra.*

FAWCETT, J.

On or about February 27, 1884, Neils Christensen pur-
chased from the state of Nebraska 40 acres, and on Janu-
ary 1, 1885, the other 120 acres of the land in controversy,
at $7 an acre, paying in each instance one-tenth of the pur-
chase price. He took possession of the land and con-
tinued to make the interest payments thereon until on or
about October 28, 1888, when he departed this life, leaving
surviving him his widow, Minnie, and his children, Mary
A., Elizabeth K., Clara J., John H. and Rosa L. Rosa L.
at that time was about seven months old. She died in 1893,
leaving her brother and sisters and mother, above named,
as her sole heirs at law. At the time of the death of Mr.
Christensen the children were all minors; the eldest being
less than nine years of age. The mother was subsequently
appointed administratrix of her husband's estate and
guardian of the minor children. At the time of the trial
of this case she had not been discharged either as adminis-
tratrix or guardian. After the death of Mr. Christensen
the administratrix made two or three payments of interest
upon the school land contracts, but neither she nor Mr.
Christensen in his lifetime ever made any further payments
of principal. On May 4, 1891, by and with the written ap-
proval of the probate judge, she, as administratrix, sold
and assigned the two land contracts to one A. L. Craig,
for a cash consideration of $1,600, said assignments being
filed on the next day in the office of the commisioner of
public lands and buildings. Upon May 28, 1891, Craig as-
signed the contracts to Harriet I. Jones, and on May 24,
1897, Mrs. Jones assigned them to her son, Harry T.
Jones, one of the defendants herein. Mr. Jones held the
contracts until January 8, 1901, when he made full and
final payment of the amount due upon the two contracts

and received deeds from the state for the lands described therein. On July 8, 1902, Jones conveyed the land in controversy, by warranty deed, to defendant Claus Hinrichs for a consideration of $5,000. During the time that Harriet I. and Harry T. Jones held the lands under the contracts and deeds respectively, they made valuable improvemnts thereon, in the construction of buildings and fences and breaking and cultivation of the land. Defendant Hinrichs was in possession of the lands for a number of years, prior to the time he purchased them, as a tenant of Mr. Jones, and after his purchase he took possession as owner and has held the same ever since. Plaintiffs brought this suit to recover the lands in controversy as heirs of Neils Christensen and Rosa L. Christensen, and based their right to a recovery upon the ground that the assignments of the school land contracts by Minnie Christensen as administratrix, even though with the approval of the probate judge, were void and of no force or effect; that neither Craig, nor any person under him, acquired any right, interest or title thereby to said lands. They allege that the defendants and each of them at all times had full notice and knowledge of the state of the title to the lands and of the rights of plaintiffs therein; that defendant Harry T. Jones took and held the legal title to the lands as trustee for and in behalf of plaintiffs; and that defendant Hinrichs took the legal title from Jones with full knowledge and notice of said trust and of the record title to the lands, and now holds the legal title in trust for plaintiffs. Trial to the court. Decree for defendants. Plaintiffs appeal.

At the time Hinrichs purchased the land from Jones he borrowed $1,000 of the purchase money from the Jones National Bank, giving a mortgage therefor; but, as the record shows that that mortgage was afterwards fully paid by Mr. Hinrichs and released of record, no reason is apparent to us why that question should be considered here. No attempt was made by plaintiffs upon the trial to show actual notice to any of the assignees of the contracts other

than that appearing upon the face of the contracts, or rather upon the first assignments thereto by the administratrix, upon the face of which assignments it appeared that she was assigning the contracts as administratrix, and that the probate judge had, in writing, approved her action; nor was any attempt made by plaintiffs to show any actual notice to defendant Hinrichs of any interest of the plaintiffs in the lands he was purchasing. As to defendant Hinrichs, it is urged that he made no examination of the records in the office of the county clerk of Seward county to ascertain the condition of the title, but that he purchased the land and took the title, relying upon the ability of his grantor, Harry T. Jones, to make good his covenants of warranty. It is the duty of one purchasing lands to make an inspection of the records, so as to ascertain the true condition of the title, and, if he fails so to do, he will be chargeable with everything which the records would have shown had he made such examination, but nothing more. In the present case, if Mr. Hinrichs had examined the records in the office of the county clerk, he would have learned from such records that Neils Christensen had purchased these lands from the state under school land contracts on the dates already stated, and that on the 8th day of January, 1901, payment in full of the balance due upon those contracts had been made by "Harry T. Jones, assignee," and that the state had issued to Mr. Jones deeds for the lands. The recitals in the deeds from the state are as follows: "Whereas on the 8th day of January, 1885 (in the one deed; February 27, 1884, in the other), all that tract or parcel of common school land of the state of Nebraska hereinafter mentioned and particularly described was sold in the manner provided by law to Neils Christensen of the county of Seward, and state of Nebraska, for the aggregate price of eight hundred and forty dollars (in the one case, and two hundred and eighty dollars in the other), has been fully paid to the proper receiving officer for the state of Nebraska, by Harry T. Jones, assignee, as shown by the records in the office of the

commissioner of public lands and buildings, and said sum being the whole amount of the purchase price for the said tract or parcel of land hereinafter described, now know ye," etc. We are unable to see anything in these deeds to put Mr. Hinrichs upon inquiry. He had a perfect right to assume that the officers of the state had done their duty and had not issued deeds to any one not entitled thereto. The officers of the state having recited in their deeds that the school lands had been purchased by Neils Christensen and that the full purchase price had been paid by "Harry T. Jones, assignee," we do not think he was required to investigate the question as to how Harry T. Jones became the assignee, but that any prudent man or examiner of abstracts would have been warranted in assuming from those recitals that Harry T. Jones was the direct assignee of Neils Christensen. The uncontradicted evidence shows that Mr. Hinrichs did not know Christensen nor any members of his family; that he knew nothing about his estate or what had been done with it, or of the assignments which had been made by the various parties above noted; and that he had been a tenant under Mr. Jones for about seven years, immediately prior to his purchase of the land, during all of which time he never had heard the title of Mr. Jones questioned. We are unable to find anything in the record even tending to show that Mr. Hinrichs was not a purchaser in good faith for a full and fair consideration, and without notice, either actual or constructive, of any outstanding equities or defects in the title. As to him, therefore, the judgment of the district court was clearly right.

It is now contended by plaintiffs that, even if defendant Hinrichs be held to be an innocent purchaser of the land without notice, that "would not relieve appellee Jones from a judgment in appellants' favor and against him for the consideration received by him from Hinrichs," upon the ground that "he, while constructive trustee for appellants, sold the trust property and appropriated the fund to his own use." The trouble with this contention is

that such a judgment could not find support either in the pleadings or the evidence.  There is no doubt about the soundness of the contention that the administratrix had no authority, either with or without the approval of the county judge, to sell the equity of the plaintiffs in the lands described in the contracts, or to assign the contracts them-selves which were the evidences of such equitable interest. Such authority could be obtained only through a proper proceeding in the district court.  But, conceding that every-thing alleged by plaintiffs as to the unauthorized sale and assignment of the land and contracts, and conceding, with-out deciding, that defendant Harry T. Jones was charge-able with notice of the unauthorized assignments to Craig, under whom he held his assignments through the inter-mediate assignment of Harriet I. Jones, then, at the time of commencing this suit, plaintiffs had an election between two remedies; one to follow the land and recover it if found in any one who was not an innocent purchaser, or an ac-tion at law against Jones for their damages; in which ac-tion either side would be entitled to a jury trial.

We think that under a fair construction of their petition they elected to follow the land, and thereby, for the pur-poses of this case, waived their other remedy; but, conced-ing that they might pursue both remedies in one action or suit, and, if they fail to reach the land, obtain a money judgment for damages, they have not done so in this case. There is nothing in either the allegations or prayer of their petition to advise defendant Jones that they were seeking to recover a judgment against him for their dam-ages, and the record plainly shows that the case was not tried in the court below upon any such theory.  The prayer of their petition as to Jones is in the following language: "For a decree  *  *  *  finding and declaring that the defendant Harry T. Jones took and held the legal title to said lands as trustee only for and on be-half of these plaintiffs, and that his grantee, the defend-ant Claus Hinrichs, took and received the legal title of said lands with notice of the said trust and notice of the

rights of these plaintiffs in and to said lands;  *  *  *
that an accounting be had of the amount paid by
the defendant Jones upon the balance of the purchase
price of said lands with interest to the state of Nebraska,
and of the amount paid for taxes upon said lands by de-
fendants, and of the amount and value of the rents, issues,
and profits of said lands due to plaintiffs; that plaintiffs
have judgment against defendants for any balance which
may be found in their favor on said accounting; that they
have judgment against defendants for their costs herein
expended, and for such other and further and different re-
lief as to the court may seem just and equitable in the
premises."

It surely cannot be urged that the language of their
prayer: "That an accounting be had of the amount paid
by the defendant Jones upon the balance of the purchase
price of said lands with interest to the state of Nebraska,
and of the amount paid for taxes upon said lands by de-
fendants, and of the amount and value of the rents, issues,
and profits of said lands due to plaintiffs; that plaintiffs
have judgment against defendants for any balance which
may be found in their favor on said accounting"—is tanta-
mount to a prayer that they be given a money judgment
against Jones "for the consideration received by him from
Hinrichs." We shall not extend this opinion by setting
out the evidence. It is sufficient to say that the evidence
falls as far short of showing a right to a money judgment
against Jones as do the allegations and prayer of their
petition. It is evident, therefore, that the court did not
err in refusing plaintiffs any relief against defendant
Jones.

From a careful examination of the pleadings and evi-
dence, we are unable to discover any error in the record,
and the judgment of the district court is therefore

AFFIRMED.